[S.F. No. 23275. In Bank. Nov. 26, 1975.]

A.B.C. DISTRIBUTING COMPANY, INC., et al.,
Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Appellant.

SAN FRANCISCO DISTRIBUTING, INC., et al.,
Plaintiffs and Respondents, v.
CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Appellant.

## COUNSEL

Thomas M. O'Connor, City Attorney, John J. Doherty and William M. Bennett, Jr., Deputy City Attorneys, for Defendant and Appellant.

Hutchinson & Quattrin, J. Albert Hutchinson and Albert G. Evans for Plaintiffs and Respondents.

## OPINION

**RICHARDSON, J.**—In these two consolidated appeals we consider the validity of a San Francisco ordinance which imposes a 1 percent payroll expense tax upon persons engaging one or more employees to perform services in San Francisco. Plaintiffs, wholesale liquor and beer distributors doing business in San Francisco, contend that the payroll expense tax ordinance may not validly apply to them since (1) article XX, section 22, of the California Constitution has reserved to the Department of

Alcoholic Beverage Control the exclusive power to collect license or occupation taxes on account of the manufacture, importation or sale of alcoholic beverages in this state, (2) state law (Rev. & Tax. Code, § 32010) provides that the taxes imposed under the Alcoholic Beverage Tax Law (*id.*, § 32001 et seq.) are in lieu of all local taxes on the sale of alcoholic beverages, and (3) state law (Rev. & Tax. Code, § 17041.5) further provides that no municipal corporation may levy or collect any tax upon the income of any person. We have concluded that San Francisco's payroll expense tax is not a license, occupation or income tax precluded by the foregoing provisions, and that accordingly the ordinance in question may be sustained as a proper exercise of the constitutional power to levy taxes for general revenue purposes.

Plaintiffs filed two separate declaratory relief actions against defendant seeking a judgment declaring that defendant's payroll expense tax ordinance was invalid as applied to them and enjoining enforcement of the ordinance. These actions were consolidated for trial and were tried upon the written stipulation jointly prepared by the parties. According to the stipulated facts, plaintiffs do business within the City and County of San Francisco and, in connection therewith, hire and employ one or more individuals as employees to perform work or render services within the city and county. The Department of Alcoholic Beverage Control requires a license for certain of plaintiffs' activities, including the sale, at wholesale, of beer, wine or distilled spirits, and related services such as warehousing, truck delivery, etc., which are incidental to the wholesale sale of alcoholic beverages. In addition, some plaintiffs engage in substantial business activities in the city and county which do not require a license.

The trial court ruled that defendant's ordinance was void and unenforceable against plaintiffs as it relates to their business as wholesalers of alcoholic beverages and entered judgment accordingly. Defendant appeals.

The ordinance at issue purports to be a revenue collecting measure; it contains no regulatory provisions, and no criminal penalties are imposed for failure to pay the tax. As related to our present inquiry, the ordinance reads: "A tax for general revenue purposes is hereby imposed upon every person who, in connection with his business, engages, hires, employs or contracts with one or more individuals as Commission Merchant or Employee, to perform work or render services in whole or

in part within the City and County of San Francisco. [¶] The amount of such tax for persons . . . shall be one (1%) percent of the payroll expense of such person; provided, that such tax shall be levied only upon that portion of payroll expense which is attributable to the City and County of San Francisco . . . . [¶] This ordinance shall not be construed as requiring any license whatsoever, nor shall payment of this tax be a condition precedent to engaging in any business within the City and County of San Francisco. This tax is imposed for general revenue purposes and in order to require commerce and the business community to carry a fair share of the costs of local government in return for the benefits, opportunities and protections afforded by the City and County of San Francisco. [§ 3.] . . . [¶] Nothing in this ordinance shall be construed as requiring the payment of any tax hereunder by a person who is subject to tax under the provisions of Ordinance No. 245-68 (Business Tax Ordinance) [a gross receipts tax] if his tax liability as computed hereunder is less than his tax liability as computed under the provisions of Ordinance No. 245-68 . . . ." (§ 17.1.)

We consider plaintiffs' respective constitutional and statutory challenges to the ordinance.

### 1. *Article XX, section 22, of the California Constitution*

Plaintiffs' primary contention is that the payroll expense tax is a license or occupation tax and that only the Department of Alcoholic Beverage Control has the power to collect such taxes from a person engaged in the manufacture, importation or sale of alcoholic beverages in this state. Plaintiffs rely upon article XX, section 22, of the state Constitution, which provides in pertinent part: "The Department of Alcoholic Beverage Control shall have the exclusive power . . . to license the manufacture, importation and sale of alcoholic beverages in this State, and to collect license fees or occupation taxes on account thereof. [¶] . . . The Legislature shall provide for apportioning the amounts collected for license fees or occupation taxes under the provisions hereof between the State and the cities, counties and cities and counties of the State, in such manner as the Legislature may deem proper."

We have had occasion to consider a similar constitutional attack in *Ainsworth* v. *Bryant* (1949) 34 Cal.2d 465 [211 P.2d 564], involving the validity of a San Francisco ordinance which levied an excise tax, collected by the retailer, on the retail purchase, use or consumption of

tangible personal property. It was argued in *Ainsworth* that the ordinance could not constitutionally be applied to the retail purchase of intoxicating liquors under former article XX, section 22, which had vested in the State Board of Equalization the exclusive power to license, and to collect license fees or occupation taxes on account of, the manufacture, importation and sale of intoxicating liquors in this state. We rejected the contention and determined that the excise tax in question was solely a revenue measure, rather than a regulatory one and was "applicable to all purchase transactions in all lines of retail business within the city and county . . . ." (P. 469.)

We explained in *Ainsworth* that the power of municipal corporations operating under a freeholder's charter to impose taxes for revenue purposes is strictly a municipal activity authorized by the state Constitution and subject only to those limitations appearing in the Constitution or the charter itself. *(Ibid.)* We noted that section 22 of article XX, being special in nature and adopted at a later date than the original constitutional grant of taxing power to local government, "must be held to control in the express field that it covers [citation] but its effect upon the plenary power of taxation possessed by a chartered municipality . . . should not be extended beyond the express terms of the constitutional reservation on the subject of 'intoxicating liquors.' [Citation.]" (P. 472; see also *Hospital Service of California* v. *City of Oakland* (1972) 25 Cal.App.3d 402, 405-407 [101 Cal.Rptr. 800] [doubts regarding tax exemptions are resolved against the taxpayer].) Thus, in *Ainsworth* we concluded that "no further exclusive power of taxation was intended" by article XX, section 22, other than the power to collect license fees or occupation taxes on account of the manufacture, importation and sale of intoxicating liquors. (P. 473.)

Next, we turned in *Ainsworth* to the challenged ordinance which imposed a tax upon the *consumer* of tangible personal property. We determined that such a tax could not be considered a license tax for the privilege of doing business, since such taxes are imposed upon the retailer, not the consumer, of goods. (P. 473.) With reference to the claim that the ordinance imposed an occupation tax, we said: "The San Francisco tax is not upon anyone's occupation; therefore it is not an occupation tax. Rather the subject of tax under the ordinance is the transaction of sale; the purchaser or consumer is made the taxpayer, and the retailer acts only as the tax collector . . . . The buyer's occupation is not taxed, for it is not a pursuit or occupation to buy at retail for use or

consumption. [Citations.] . . . Levied upon the freedom or privilege of purchase, it is properly denominated in the ordinance as an 'excise tax' as distinguished from a personal property tax. [Citations.] *Adopted purely for revenue purposes, it covers all lines of retail business within the city, and retailers of intoxicating liquors become subject to it, not because they sell that particular commodity but because they sell tangible personal property.* Under well settled legal principles, immunity from such a general taxing measure must be clearly established [citations] . . . ." (Pp. 474-475, italics added.)

Finally, we pointed out that under the San Francisco ordinance liquor retailers were treated no differently than any other retailer in the city and county; no attempt was made to single out liquor retailers for special regulatory treatment. (Pp. 475-477.)

The *Ainsworth* principles are controlling here. Although the payroll expense tax is not a "consumer's tax" as in *Ainsworth,* the challenged tax bears little resemblance to a license or occupation tax, for as the ordinance itself recites, the tax is not paid in consideration of the issuance of a license granting the privilege to engage in business, and no particular occupation is affected by the uniform tax levy. (See generally 16 McQuillin, Municipal Corporations (1972) §§ 44.190-44.191.) The tax applies generally to *all* businesses with employees who perform services within the city and county. As in *Ainsworth,* the payroll expense tax is a general revenue measure which does not single out for special treatment persons engaged in the business of manufacturing or selling alcoholic beverages.

Plaintiffs argue, however, that in effect the payroll expense tax is a special occupation tax. They note that San Francisco has also enacted a gross receipts tax for which plaintiffs and other liquor wholesalers are exempt (see Rev. & Tax. Code, § 32010, discussed below), and that the payroll expense tax ordinance (§ 17.1, *supra*) expressly exempts from the payroll tax any person whose gross receipts tax liability exceeds his payroll tax liability. Plaintiffs suggest that by reason of this exemption, the only persons subject to a payroll expense tax are persons engaged in the business of manufacturing or selling alcoholic beverages. Thus, plaintiffs assert that the payroll expense tax ordinance was enacted as a subterfuge to tax monies which otherwise would have properly avoided taxation.

■ Had plaintiffs established at trial the facts which underlie the foregoing theory, namely, that the payroll expense tax ordinance had the intent or effect of singling out for taxation persons engaged in manufacturing or selling alcoholic beverages, we might conclude that the tax was invalid, since a statute which is seemingly valid on its face may be invalid if applied or enforced in a discriminatory manner. (*Brock* v. *Superior Court* (1939) 12 Cal.2d 605, 610 [86 P.2d 805]; *City of Banning* v. *Desert Outdoor Advertising, Inc.* (1962) 209 Cal.App.2d 152, 154 [25 Cal.Rptr. 621].) However, "A discriminatory intent or purpose is not presumed. [Citations.] To the contrary, the good faith of those enforcing the law and the validity of their action in the premises are presumed. [Citation.] The burden of proving discrimination is upon the complaining party. [Citation.]" (*City of Banning, supra,* at p. 155; see 11 Cal.Jur.2d, Constitutional Law, §§ 74-79, and cases cited.)

■ Plaintiffs' proof was limited to the fact that the payroll expense tax ordinance exempts taxpayers whose gross receipt tax liability exceeds payroll tax liability. The assumption that only persons engaged in the liquor business must pay a payroll expense tax is speculation. Indeed, defendant has flatly denied the discriminatory character of its payroll expense tax, stating that it is a matter of public record "that Payroll Expense Tax collections during the last fiscal year [evidently, 1972-1973] were $20,521,498. Very little, if any, of this was collected from the alcoholic beverage industry." Plaintiffs have not contradicted defendant in this regard.

We conclude that the payroll expense tax at issue is not a license or occupation tax "on account of" the manufacture, importation or sale of alcoholic beverages within the meaning of article XX, section 22, of the California Constitution.

### 2. *Section 32010 of the Revenue and Taxation Code*

■ Plaintiffs' second contention is that the payroll expense tax, as applied to them, is a tax "on the sale" of alcoholic beverages and its imposition is, accordingly, within the exclusive power of the state under section 32010 of the Revenue and Taxation Code. That section relevant to our discussion provides: "The taxes imposed by this part [the Alcoholic Beverage Tax Law, Rev. & Tax. Code, §§ 32001-32556] are in lieu of all county, municipal, or district taxes on the sale of beer, wine or distilled spirits."

Once again, *Ainsworth* is controlling. As noted above, in that case we explained that San Francisco's tax on the retail purchase, use or consumption of tangible personal property "covers all lines of retail business within the city, and retailers of intoxicating liquors become subject to it, *not because they sell that particular commodity but because they sell tangible personal property.* Under well-settled legal principles, immunity from such a general taxing measure must be clearly established [citations]. . . ." (*Ainsworth* v. *Bryant, supra,* at p. 475, italics added.) Similarly, in the instant case plaintiffs become subject to the payroll expense tax, not because they sell alcoholic beverages, but because they employ persons performing services within the city and county. Defendant's tax is imposed on the payroll expense of all such businesses, and is not a tax "on the sale" of alcoholic beverages.

In support of their statutory attack plaintiffs rely primarily upon *Century Plaza Hotel Co.* v. *City of Los Angeles* (1970) 7 Cal.App.3d 616 [87 Cal.Rptr. 166], which invalidated a so-called "tipplers' tax" imposed by Los Angeles upon the purchase price of alcoholic beverages sold by a retailer for on-premises consumption. The appellate court left open the question whether the tax constituted an improper attempt to regulate the sale of alcoholic beverages, which matter is vested exclusively in the state under article XX, section 22, of the California Constitution. Instead, the court in *Century Plaza* held the tax invalid under section 32010 of the Revenue and Taxation Code as a local tax "on the sale" of alcoholic beverages.

*Century Plaza* acknowledged the power reserved to charter cities and counties to enact and enforce laws on the subject of municipal affairs, and noted that "There is no doubt that taxation for revenue for municipal purposes ordinarily is a 'municipal affair.' [Citations.]" (7 Cal.App.3d at p. 622.) However, the court further explained that as to matters of statewide concern, even charter municipalities remain subject to and controlled by applicable general state laws, if the Legislature's intent was to occupy the field to the exclusion of municipal regulation. (*Id.* p. 621; see *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-63 [81 Cal.Rptr. 465, 460 P.2d 137].)

In analyzing the "tipplers' tax" the *Century Plaza* court determined that although the tax was purportedly levied on the "purchase" of alcoholic beverages, "it undoubtedly imposes a tax on a 'sale,' as that term is defined in Revenue and Taxation Code section 32010, of 'distilled

spirits.' [Fn. omitted.] Since Revenue and Taxation Code section 32010 states it is 'in lieu' of all municipal taxes on the sale of distilled spirits, the Legislature obviously intended it to be in place of local sales taxes which are thereby intended to be forbidden. [Citations.]" (7 Cal.App.3d at p. 622.) In a subsequent portion of the opinion, the court also concluded that the Legislature had preempted the entire field of sales and use taxation. (7 Cal.App.3d at pp. 624-625; see Rev. & Tax. Code, § 7203.5; Stats. 1968, ch. 1265.)

*Century Plaza* is distinguishable from the instant case, in that the Los Angeles "tipplers' tax" quite clearly singled out the liquor industry in imposing a tax upon the purchase (and, necessarily, the sale) of alcoholic beverages. In contrast, as we have seen, San Francisco's payroll expense tax is applicable to all businesses having payrolls within the city and county, and is neither imposed upon the sale of alcoholic beverages nor measured by the gross receipts from such sales.

It is true that, as applied to plaintiffs, the payroll expense tax probably will be paid from revenues derived at least in part from the sale of alcoholic beverages. To a degree every tax and expense of this type necessarily results in a reduction of available revenues, yet this indirect burden has never been held sufficient to nullify such taxation. (See e.g. *Ainsworth* v. *Bryant, supra,* 34 Cal.2d 465; *Three G Distill. Corp.* v. *County of L. A.* (1941) 46 Cal.App.2d 498, 502 [116 P.2d 143] [upholding local personal property tax].)

As we observed in *Rivera* v. *City of Fresno* (1971) 6 Cal.3d 132, 136-137 [98 Cal.Rptr. 281, 490 P.2d 793], although the state has preempted the field of sales and use taxation, nothing prevents a municipality from levying a "substantially different" tax otherwise authorized by law. (See also Rev. & Tax. Code, § 7203.5.)

3. *Section 17041.5 of the Revenue and Taxation Code*

■ Plaintiffs' final contention is that the payroll expense tax is an *income* tax, and that the power to levy and to collect such taxes lies exclusively with the state. (Rev. & Tax. Code, § 17041.5; see Cal. Const., art. XIII, § 26 ["Taxes on or measured by income may be imposed . . . as prescribed by law."].) Section 17041.5 provides that "Notwithstanding any statute, ordinance, regulation, rule or decision to the contrary, no city, county, city and county . . . whether chartered or not, shall levy or

collect or cause to be levied or collected any tax upon the income, or any part thereof, of any person, resident or nonresident. . . .'"

The short answer to plaintiffs' contention is that the payroll expense tax is not a tax on or measured by *their* income. Instead, the tax is imposed upon plaintiffs by reason of their employment of labor within the city and county, measured by the expense incurred by plaintiffs in conducting this aspect of their business. The fact that the tax is measured by wages paid to the employees would not convert the tax to an income tax. As this court explained in *Gillum* v. *Johnson* (1936) 7 Cal.2d 744, 763 [62 P.2d 1037, 63 P.2d 810, 108 A.L.R. 595], involving a federal social security payroll tax, such a tax may be an income tax to the *employee,* but *"As affecting employers* it is an excise tax, or a tax on the right to do certain things . . . ." (Italics added.)

Plaintiffs appear to assume that the payroll expense tax herein is an "income" tax because it will be paid from plaintiffs' income. Yet, as we have previously explained, all taxes necessarily involve some reduction of and relationship to available revenues.

We conclude that the payroll expense tax is a valid tax measure authorized by the "home rule" provisions of the state Constitution (art. XI, §§ 5, 7) which impliedly empower local governmental agencies to levy taxes for general revenue purposes.

The judgment is reversed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Sullivan, J., and Clark, J., concurred.

Respondents' petition for a rehearing was denied December 24, 1975.